**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATE 3624,<br><br>      Plaintiff,<br><br>    v.<br><br>EVERGREEN RECOVERY, INC.; ANGELA McGOWAN; ROBERT MURPHY; and MOLLY BLUME,<br><br>      Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATE 3624'S
COMPLAINT FOR DECLARATORY JUDGMENT**

Underwriters at Lloyd's, London, Syndicate 3624 ("Hiscox"), for its Complaint for Declaratory Judgment, alleges on knowledge, information, and belief as follows:

**NATURE OF THE ACTION**

1. Hiscox files this Complaint to obtain a judicial determination and declaration pursuant to 28 U.S.C. §§ 2201-2201 and Rule 57 of the Federal Rules of Civil Procedure as to the parties' rights and obligations under two insurance policies issued by Hiscox to Evergreen Recovery, Inc. ("Evergreen").

2. In particular, Hiscox seeks a judicial determination that it has no duty under either policy to defend or indemnify Evergreen in connection with two deaths that occurred at an Evergreen facility at 1157 E Lawson Ave., St. Paul, Minnesota on October

1

20, 2022.

3. A real, immediate, and justiciable controversy exists between the parties relating to their respective rights, duties, and obligations under the policies and will continue to exist until such time as it is resolved by this Court.

## PARTIES

4. Plaintiff Hiscox is wholly owned by Hiscox Corporate Member, Ltd., which is a corporation registered and domiciled in England and Wales and managed by Hiscox Syndicate Ltd. Thus, Hiscox is a citizen of a foreign state, the United Kingdom, for purposes of 28 U.S.C. § 1332. Hiscox's domicile was in England and Wales at the time of the incidents at issue here and as of the date of this Complaint.

5. Defendant Evergreen is a corporation organized under the laws of Minnesota and with its principal place of business in Minnesota. It is therefore a citizen of Minnesota for diversity purposes. Evergreen is the Named Insured under the Policies.

6. Defendant Angela McGowan is the next of kin for decedent Jon Ross Wentz and has asserted a claim against Evergreen arising out of Mr. Wentz's death. Ms. McGowan is a resident in and citizen of the State of Minnesota.

7. Defendants Robert Murphy and Molly Blume are co-trustees for the next of kin of decedent Jason Murphy and have asserted a claim against Evergreen arising out of Mr. Murphy's death. Mr. Murphy and Ms. Blume are residents in and citizens of the State of Minnesota.

## JURISDICTION AND VENUE

8. This lawsuit is an action for declaratory judgment under 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between the parties as described more fully below.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of a State and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. One of the claimants has indicated they seek policy limits to resolve the case – that is, $1 million to $2 million. The amount in controversy thus exceeds $75,000.

11. This action currently is ripe for adjudication.

12. Venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

**The Policies**

13. Hiscox issued Insurance for Allied Healthcare Professionals Certificate No. ME05136420.22 to Evergreen for the policy period September 13, 2022 to May 16, 2023 (the "22-23 Policy"). A true and correct copy of the 22-23 Policy (without the application and with the premium amount redacted) is attached as Exhibit 1.

14. Hiscox issued Insurance for Allied Healthcare Professionals Certificate No. ME05136420.23 to Evergreen for the policy period May 16, 2023 to May 16, 2024, but it was cancelled on February 1, 2024 (the "23-24 Policy" and together with the 22-23 Policy,

the "Policies"). A true and correct copy of the 23-24 Policy (without the application and with the premium amount redacted) is attached as Exhibit 2.

15. Both of the Policies include a Professional Liability Coverage Part ("PL Coverage Part") and a General Liability Coverage Part ("GL Coverage Part"). Ex. 1, Declarations, Item 7; Ex. 2, Declarations, Item 7.

16. The 22-23 Policy has a $2 million each Claim limit of liability under the GL Coverage Part and a $1 million each Claim limit of liability for the PL Coverage Part, both subject to a $3 million aggregate limit of liability, and a $25,000 retention. Ex. 1, Declarations, Item 7, as amended by Endorsements 21 & 23.

17. The 23-24 Policy has a $1 million each Claim limit of liability for the PL Coverage Part and a $2 million each Occurrence limit of liability for the GL Coverage Part, both subject to a $3 million aggregate limit of liability and a $25,000 retention. Ex. 2, Declarations, Item 7, as amended by Endorsements 8 & 32.

18. The Bodily Injury and Property Damage Insuring Agreement of the GL Coverage Part provides that

> **We** will pay up to the **coverage part limit** for **damages you** become legally obligated to pay because of **bodily injury** or **property damage** to which this Coverage Part applies, provided:
>
> 1. The **bodily injury** or **property damage** occurs during the **policy period**;
>
> 2. The **bodily injury** or property damage is caused by an **occurrence** that takes place in the **coverage territory**; and
>
> 3. You have paid the applicable **retention** stated in the Declarations.

4

> **We** will have the right and duty to defend any **claim** seeking such **damages**, as set out in Section II. Defense and supplementary payments. **We** may, at our discretion, investigate any **occurrence** and settle any **claim** that may result.

Exs. 1 & 2, GL Coverage Part, Section I.A.

19. The Policies define "we" to mean the Underwriters identified on the Declarations as issuing this policy. Exs. 1 & 2, General Terms & Conditions, Section VI, p. 5 of 5.

20. The Polices define "you" to mean any individual or entity described as an insured in any Coverage Part you have purchased. Exs. 1 & 2, General Terms & Conditions, Section VI, p. 5 of 5.

21. The GL Coverage Part defines "you" to mean the named insured and any other person or organization expressly described as an insured in Section III. Exs. 1 & 2, Section VII, p. 19 of 19.

22. The Named Insured includes Evergreen Recovery, Inc. Exs. 1 & 2, Declarations, Item 1.

23. The GL Coverage Part defines "damages" to mean

> any monetary amount **you** are ordered to pay by a court, or by an arbitrator in an arbitration to which **we** have consented.
>
> However, **damages** does not include any civil, regulatory, or criminal fines, restitution, disgorgement, sanctions, taxes, or penalties, including those imposed by any federal, state, or local governmental authority, or any multiple, punitive, or exemplary damages.
>
> **Damages** because of **bodily injury** includes care, loss, or services, or death resulting at any time from the **bodily injury**.

Exs. 1 & 2, GL Coverage Part, Section VII, p. 16 of 19.

24. The Policies define "coverage part limit" to mean the amount stated in the Declarations as the aggregate limit applicable to each Coverage Part the insured has purchased which is subject to an aggregate limit. Exs. 1 & 2, General Terms & Conditions, Section VI, p. 5 of 5.

25. The Policies define "policy period" to mean the period of time identified in Item 2 of the Declarations, and any optional extension period, if purchased. Exs. 1 & 2, General Term & Conditions, Section VI, p. 5 of 5.

26. The "policy period" of the 22-23 Policy as set forth in Item 2 of the Declarations is September 13, 2022 to May 16, 2023. Ex. 1, Declarations, Item 2.

27. The "policy period" of the 23-24 Policy as set forth in Item 2 of the Declarations is May 16, 2023 to February 1, 2024. Ex. 2, Declarations, Item 2, as amended by Endorsement 37.

28. The Policies define "bodily injury" to mean "physical injury, sickness, or disease sustained by a person, including resulting death, humiliation, mental injury, mental anguish, emotional distress, suffering, or shock, at any time. All such resulting injury will be deemed to occur at the time of the physical injury, sickness, or disease that caused it." Exs. 1 & 2, GL Coverage Part, Section VII, p. 15 of 19.

29. The Policies define "occurrence" to mean "an accident arising out of the insured's business operations, including continuous or repeated exposure to substantially

6

the same general harmful conditions." Exs. 1 & 2, GL Coverage Part, Section VII, p. 18 of 19.

30. The Policies define "retention" to mean the amount or time identified as such in the Declarations. Exs. 1 & 2, General Term & Conditions, Section VI, p. 5 of 5.

31. The GL Coverage Part defines "claim" to mean any (1) written assertion of liability; (2) written demand for damages; or (3) civil proceeding seeking damages, for bodily injury, property damage or personal and advertising injury to which this Coverage Part applies. This includes an arbitration proceeding or any other alternative dispute resolution proceeding in which such damages are sought and to which the insured submits with Hiscox's consent. Exs. 1 & 2, GL Coverage Part, Section VII, p. 15 of 19.

32. The General Liability Coverage Part includes an exclusion under section VI.D. (Exclusions applicable to the entire general liability coverage part) titled "Professional services" which provides:

> **We** will have no obligation to pay any sums under this Coverage Part for medical expenses, or for any **claim**, including any **damages** or **claim expenses**, for **bodily injury**, **property damage**, or **personal and advertising injury** . . . based upon or arising out of **your** actual or alleged performance of or failure to perform **professional services**.

Exs. 1 & 2, Section VI.D.14.

33. The GL Coverage Part defines "professional services" to mean professional services customarily provided by an architect, engineer, surveyor, physician, surgeon, dentist or other healthcare provider, accountant, insurance agent/broker, investment advisor, securities broker/dealer, or attorney, or any other services identified as Covered

7

Professional Services in the Declarations. Exs. 1 & 2, Section VII, GL Coverage Part, p. 18 of 19.

34. The Declarations identify the Policies' "Covered Professional Services" as "[s]olely in the performance of inpatient and outpatient substance abuse rehabilitation and sober living services." Exs. 1 & 2, Declarations, p. 2 of 3.

35. The PL Coverage Part insuring agreement provides that

> **We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against **you** alleging a negligent act, error or omission in **your professional services** performed on or after the **retroactive date**, including but not limited to:
>
> 1. breach of any duty of care;
>
> 2. **bodily injury**; or
>
> 3. **personal and advertising injury**,
>
> provided the **claim** is first made against **you** during the **policy period** and is reported to **us** in accordance with Section V. Your obligations.

Exs. 1 & 2, PL Coverage Part, Section I.

36. The PL Coverage Part defines "damages" to mean the following amounts incurred in excess of the retention:

> 1. a monetary judgment or monetary award that **you** are legally obligated to pay (including pre or post-judgment interest and fees); or
>
> 2. a monetary settlement negotiated by **us** with **your** consent.
>
> Damages includes punitive damages to the full extent they are insurable under the law of any applicable jurisdiction that most favors coverage.

Exs. 1 & 2, PL Coverage Part, Section VII, p. 6 of 7.

8

37. The PL Coverage Part defines "claim expenses" to mean

> the following sums incurred in excess of the **retention** and with **our** prior written consent:
>
> 1. all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a **claim**; and
>
> 2. premiums on appeal bonds, attachment bonds, or similar bond, but **we** will have no obligation to apply for or furnish any such bonds.

Exs. 1 & 2, PL Coverage Part, Section VII, p. 6 of 7.

38. The PL Coverage Part defines "claim" to mean any written assertion of liability or any written demand for financial compensation or non-monetary relief. Exs. 1 & 2, PL Coverage Part, Section VII, p. 6 of 7.

39. The PL Coverage Part defines "you" to include the Named Insured. Exs. 1 & 2, PL Coverage Part, Section VII, p. 7 of 7.

40. The PL Coverage Part defines "bodily injury" to mean physical injury, sickness, disease, or death sustained by a person, and any resulting humiliation, mental injury, mental anguish, emotional distress, suffering, or shock. Exs. 1 & 2, PL Coverage Prat, Section VII, p. 6 of 7.

41. The PL Coverage Part defines "professional services" to mean only those services identified as Covered Professional Services under the Allied Healthcare Professional Liability Coverage Part section of the Declarations. Exs. 1 & 2, Section VII, p. 7 of 7.

42. Section V (Your obligations) of the PL Coverage Part provides that "**You**

9

must give written notice to **us** of any claim . . . as soon as possible, but in any event, no later than 60 days after the end of the policy period." Exs. 1 & 2, PL Coverage Part, Section V.

43. Each of the Policies contains several endorsements titled Restriction of Location Endorsement (Related Offsite Activities) which provides that

> This policy applies only to **your professional services** or business operations performed at the location(s) identified below.
>
> However, this policy will also apply to **claims** arising from operations that take place at any other location(s) which is not specified below, but only if such **claim** arises from an **insured's** involvement in or performance of activities or operations that are incidental to the **professional services** that **you** perform at the location(s) identified below.
>
> Solely for purposes of this Endorsement, the term **"professional services"** means those services identified as Covered Professional Services in the Declarations.
>
> [ . . . ]
>
> Solely with respect to any Coverage Part(s) written on a claims-made basis forming a part of this policy, the **retroactive date** applicable to any **claim** arising from:
>
> 1. **your professional services** or business operations performed at the location(s) identified above; or
>
> 2. other activities or operations that are incidental to the **professional services** that **you** perform at the location(s) identified above, will be the corresponding **retroactive date** specified above, and not what is stated in the Declarations.

Ex. 1, Endorsements 18, 20, 26 & Ex. 2, Endorsements 9, 23, 26, 28, 35.

44. Evergreen's 1157 E Lawson Ave. location was first added to the Policies in Endorsement 25 to the 22-23 Policy, effective December 14, 2022, and the retroactive date for that location is listed as December 14, 2022. Ex. 1, as amended by Endorsement 25.

10

## THE INCIDENT & CLAIM FOR COVERAGE

45. On October 20, 2022, Jason Murphy and Jon Ross Wentz were killed by Joseph Francis Sandoval II at the Evergreen Facility at 1157 E. Lawson Avenue in St. Paul Minnesota (the "Incident"). A true and correct copy of a draft complaint arising out of the Incident detailing these allegations is attached as Exhibit 3. A true and correct copy of a news article about Mr. Sandoval's guilty plea is attached as Exhibit 4.

46. At the time, Jon Wentz was a resident of the home, and Jason Murphy was a repairman. Ex. 3 ¶ 10; Ex. 4.

47. Prior to October 20, 2022, Mr. Sandoval was undergoing treatment and residing at an Evergreen facility at 796 Capitol Heights in St. Paul, Minnesota, but an issue arose that prompted his transfer from that location. Ex. 3 ¶¶ 11-12.

48. Evergreen transferred Mr. Sandoval to the Evergreen location at 1157 E. Lawson Avenue in St. Paul, Minnesota, on or about October 20, 2022, and he was driven to the new location by an Evergreen lead housing support specialist. Ex. 3 ¶ 13.

49. The Evergreen housing support specialist left Mr. Sandoval in front of a television set, unattended, and left the premises around 3:30 p.m. Ex. 3 ¶ 15.

50. Shortly thereafter, Mr. Sandoval stabbed Mr. Wentz and Mr. Murphy to death. Ex. 3 ¶ 16; Ex. 4.

51. On July 25, 2024, the United States of America filed a Complaint for Permanent Injunction and other Equitable Relief in the United States District Court for the District of Minnesota against Evergreen and its owners to prevent the disposition of

property allegedly derived from the commission of fraud on the United States, No. 0:24-cv-02944. On August 9, 2024, the Court granted the governments Motion for Preliminary Injunction and appointed Ranelle Leier, of Fox Rothschild LLP as receiver over Evergreen's assets.

52. On August 30, 2024, counsel for Robert Murphy and Molly Blume, as co-trustees for the next of kin of Jason Murphy in relation to his death, sent a letter to an insurance broker at the Maguire Agency indicating that they had requested that Evergreen's prior counsel tender the claim to its insurer, but were unaware whether the attorney had done so (the "Murphy Letter"). A true and correct copy of the August 30, 2024 letter is attached as Exhibit 5.

53. The Murphy Letter requested insurance policy and limit of liability information, and served as a notice to preserve evidence. Ex. 5, at 1-2.

54. The Murphy Letter also stated that it was intended to put the recipient on notice of "the existence of very serious claims and to alert you and your insurer so that you and your insurer do not allow evidence to be destroyed." Ex. 5, at 2.

55. The Murphy Letter was forwarded to Hiscox on September 5, 2024, and was the first notice Hiscox received of the Incident or any claims related to it.

56. On October 16, 2024, counsel for the family of Jon Ross Wentz sent a letter to an insurance broker at the Maguire Agency stating that they had also sent an evidence preservation request to Evergreen and its former counsel and had requested insurance information from that counsel (the "Wentz Letter"). A true and correct copy of the Wentz

Letter is attached as Exhibit 6.

57. The Wentz Letter indicates that the sender had learned on October 16, 2024 that Evergreen's prior counsel was no longer representing Evergreen. Ex. 6, at 1.

58. The Wentz Letter also requested insurance information. Ex. 4, at 2.

59. Counsel for Ms. McGowan, the trustee of Mr. Wentz's next of kin, also sent a letter to Hiscox on January 31, 2025, providing additional information regarding the incident and the alleged damages. In that letter, Ms. McGowan indicated the damages likely exceed the available policy limits – that is, $1 million or $2 million, depending on the coverage part.

60. Ms. McGowan's counsel has also provided a draft complaint against Evergreen to Hiscox (the "Draft Complaint"). Ex. 3.

61. The Draft Complaint alleges the following:

- "Evergreen provided substance use disorder treatment program serving persons with substance use disorder and mental health disorder," Ex. 7 ¶ 6;

- "Evergreen operates numerous cooperative living residences (hereinafter 'sober houses') in the Saint Paul area, including the houses located on 1157 Lawson Avenue and 796 Capitol Heights," Ex. 7 ¶ 7;

- Wentz was "undergoing substance abuse treatment and residing at the 'sober house' operated by Evergreen and located on 1157 Lawson Ave"

13

in St. Paul, Minnesota, Ex. 7 ¶ 5;

- "[Mr. Sandoval] was undergoing substance abuse treatment and residing at 796 Capitol Heights sober house, operated by defendant Evergreen," Ex. 7 ¶ 8;

- "[W]hile Mr. Sandoval was in treatment and in the care of Evergreen at the 796 Capitol Heights house, an issue arose that prompted his transfer from that location," Ex. 7 ¶ 12;

- "Mr. Sandoval was 'swapped' with another resident at 1157 Lawson Avenue sober house where Mr. Wentz resided," Ex. 7 ¶ 13;

- "[O]n October 20, 2022, Mr. Sandoval was driven from 796 Capitol Heights location to 1157 Lawson Avenue by Chris Palmer, Evergreen's lead housing support specialist," Ex. 7 ¶ 14;

- "Chris Palmer dropped off Mr. Sandoval and his belongings at 1157 Lawson Avenue sober house, left him in front of a television set, unattended, and left the premises around 3:30 in the afternoon," Ex. 7 ¶ 15;

- "Mr. Sandoval entered Mr. Wentz's personal area, assaulted him with a knife, stabbing him several times, causing him extreme pain and death," Ex. 7 ¶ 16;

- "Mr. Palmer was an employee of Evergreen and acting in the course

and scope of his employment," Ex. 7 ¶ 17.

62. The Draft Complaint asserts a cause of action for negligence. In that cause of action, it alleges that Evergreen was providing treatment and temporary housing to Mr. Sandoval as part of its program and was aware that he was found incompetent to stand trial in pending violent felony charges and was conditionally released and found his way to Evergreen. Ex. 7 ¶¶ 22-23.

63. The negligence cause of action further alleges that Evergreen knew or should have known Mr. Sandoval suffered from delusions, mental illness, mental defect, and/or serious psychological conditions that made him a danger to others, including the decedent, and that Evergreen failed to take any remedial, corrective, protective, disciplinary or other supervisory action against Mr. Sandoval despite knowledge of his propensity for violence and his potentially dangerous psychological condition. Ex. 7 ¶¶ 26, 28.

64. Hiscox sent letters to Robert Murphy and Molly Blume on December 5, 2024, and to Angela McGowan on December 17, 2024, advising that no coverage was available under the GL Coverage Part based on the GL Coverage Part's professional services exclusion. True and correct copies of the December 5 and 17, 2024 disclaimer letters are attached as Exhibits 7 & 8.

65. Hiscox sent a letter to counsel for Robert Murphy and Molly Blume and counsel for Angela McGowan on December 23, 2024, advising that no coverage was available under the PL Coverage Part because the 23-24 Policy was cancelled prior to the

15

date any claim was made and because the incident occurred before 1157 Lawson Avenue was added to the 22-23 Policy as a scheduled location. A true and correct copy of the December 23, 2024 disclaimer letter is attached as Exhibit 9.

66. Ms. McGowan has indicated she disputes Hiscox's conclusion as to coverage.

## COUNT I

### For a Declaration That There Is No Coverage Under the Policies' PL Coverage Part

67. Hiscox realleges and incorporates by reference the foregoing allegations in this Complaint.

68. The PL Coverage Part insuring agreement provides coverage only for claims against the insured alleging a negligent act, error or omission in the insured's professional services performed on or after the retroactive date, and only if the claim is made against the insured during the policy period and reported to Hiscox as soon as possible, but in any event no later than 60 days after the end of the policy period.

69. Coverage under the PL Coverage Part also applies only to the insured's professional services or business operations performed at the scheduled locations, or activities or operations that are incidental to the professional services the insured performs at the scheduled locations, and the Policies provide specific retroactive dates for each location.

70. The location where the Incident took place, 1157 E Lawson Ave., was added as a scheduled location on December 14, 2022 and has a retroactive date of December 14,

2022.

71. The Incident occurred on October 20, 2022.

72. Because the PL Coverage Part applies only to claims alleging wrongdoing in the insureds' professional services performed on or after the retroactive date, and here, the Incident occurred prior to the retroactive date for the relevant location, no coverage under the PL Coverage Part is available for the Incident or any claims related to it.

73. Additionally, the 23-24 Policy was cancelled on February 1, 2024, and no claims were made prior to that date and reported to Hiscox.

74. To the extent there was any such claim made prior to the end of the policy period that Hiscox is not aware of, such claim was not reported to Hiscox within 60 days after the end of the policy period, because the first notice Hiscox received of the Incident was on September 5, 2024.

75. Therefore, Hiscox is entitled to a declaration that it has no duty to defend or indemnify Evergreen or any other party in connection with the Incident under the PL Coverage Part because the Policies were cancelled before any claim was made, no claim was timely reported, or because the Incident did not occur or arise out of operations at a scheduled location.

## **COUNT II**

### **For a Declaration That There Is No Coverage Under the Policies' GL Coverage Part Due to the Professional Services Exclusion**

76. Hiscox realleges and incorporates by reference the foregoing allegations in

this Complaint.

77. The professional services exclusion in the GL Coverage Part provides that

> **We** will have no obligation to pay any sums under this Coverage Part for medical expenses, or for any **claim**, including any **damages** or **claim expenses**, for **bodily injury**, **property damage**, or **personal and advertising injury** . . . based upon or arising out of **your** actual or alleged performance of or failure to perform **professional services**.

Exs. 1 & 2, Section VI.D.14.

78. The GL Coverage Part defines "professional services" to mean professional services customarily provided by an architect, engineer, surveyor, physician, surgeon, dentist or other healthcare provider, accountant, insurance agent/broker, investment advisor, securities broker/dealer, or attorney, or any other services identified as Covered Professional Services in the Declarations. Exs. 1 & 2, Section VII, p. 18 of 19.

79. The Declarations identify the Policy's "Covered Professional Services" as "[s]olely in the performance of inpatient and outpatient substance abuse rehabilitation and sober living services." Exs. 1 & 2, Declarations, p. 2 of 3.

80. The claims arising out of the Incident, including the Draft Complaint, are based upon or arising out of Evergreen's actual or alleged performance of or failure to perform "professional services" – that is, Evergreen's performance of inpatient and outpatient substance abuse rehabilitation and sober living services or services as a healthcare provider.

81. Additionally, the GL Coverage Part under the 23-24 Policy is inapplicable because the occurrence did not take place during the policy period of the 23-24 Policy.

82. Therefore, Hiscox is entitled to a declaration that it has no duty to defend or indemnify Evergreen in connection with the Incident under the GL Coverage Part based on the Professional services exclusion.

**WHEREFORE**, Hiscox respectfully requests the Court:

(A) Declare and enter judgment that Hiscox has no duty to defend or indemnify Evergreen under the PL Coverage Part of the 22-23 Policy and the 23-24 Policy in connection with the Incident or any claims arising out of the Incident; and

(B) Declare and enter judgment that Hiscox has no duty to defend or indemnify Evergreen under the GL Coverage Part of the 22-23 Policy and the 23-24 Policy in connection with the Incident or any claims arising out of the Incident.

## Reservation

Other terms, conditions and limitations of the Policies may operate to bar or limit coverage for some or all of the amounts for which Defendants seek coverage. Hiscox reserves the right to raise affirmatively other terms, conditions and limitations as defenses to coverage as appropriate, including the right to amend the Complaint.

Dated: July 14, 2025                    */s/ Suzanne L. Jones*
                                        Suzanne L. Jones (#389345)
                                        Gordon Rees Scully Mansukhani LLP
                                        80 S. 8th Street, Suite 3850
                                        Minneapolis, MN 55402
                                        T: 612-364-1742
                                        sljones@grsm.com

                                        and

Leland H. Jones IV (motion for pro hac vice admission to be submitted)
Bonnie J. Thompson (motion for pro hac vice admission to be submitted)
LAVIN RINDNER DUFFIELD LLC
1717 K Street, NW
Washington, DC 20006
T: 202.759.1138
ljones@lrd.law
bthompson@lrd.law
*Attorneys for Plaintiff*
*Underwriters at Lloyd's, London,*
*Syndicate 3624*